USDA-FmHA  
Form FmHA 1927-1 ME  
(Rev. 12-93)

Position 5

FOR REGISTRY USE

## Exhibit 2
### REAL ESTATE MORTGAGE FOR MAINE

**11325**

BK 1496 PG 129

THIS MORTGAGE is made and entered into by _____ CHRISTINE D OGDEN _____

residing in _____ Searsport, Waldo _____ County, Maine, whose post office address is

_____ RR #1, Box 98, Searsport, Me 04974 _____,

the mortgagor(s), herein called "Borrower," and the United States of America, acting through the Farmers Home Administration, United States Department of Agriculture, the mortgagee, whose principal office is located in Washington, D.C., herein called the "Government," and:

WHEREAS Borrower is justly indebted to the Government evidenced by one or more certain promissory note(s) or assumption agreement(s) or any shared appreciation or recapture agreement, herein called "note," which has been executed by Borrower, is payable to the order of the Government, authorizes acceleration of the entire indebtedness at the option of the Government upon any default by Borrower, and is described as follows:

| Date of Instrument | Principal Amount | Annual Rate of Interest | Due Date of Final Installment |
|---|---|---|---|
| November 17, 1994 | $66,200.00 | 8.0% | November 17, 2032 |

(The term "Principal Amount" above includes any applicable noncapitalized interest.)
(The interest rate for limited resource farm ownership or limited resource operating loan(s) secured by this instrument may be increased as provided in the Farmers Home Administration regulations and the note.)

And the note evidences a loan to Borrower, and the Government, at any time, may assign the note and insure the payment thereof pursuant to the Consolidated Farm and Rural Development Act, or Title V of the Housing Act of 1949, or any other statute administered by the Farmers Home Administration

And it is the purpose and intent of this instrument that, among other things, at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the note, this instrument shall secure payment of the note; but when the note is held by an insured holder, this instrument shall not secure payment of the note or attach to the debt evidenced thereby, but as to the note and such debt shall constitute an indemnity mortgage to secure the Government against loss under its insurance contract by reason of any default by Borrower;

And this instrument also secures the recapture of any deferred principal and interest or of any interest credit and subsidy which may be granted to the Borrower by the Government pursuant to 42 U.S.C. § 1472 (g) or 1490a, respectively, or any amount due under any Shared Appreciation/Recapture Agreement entered into pursuant to 7 U.S.C. § 2001.

NOW, THEREFORE, in consideration of the loan(s) and (a) at all times when the note is held by the Government, or in the event the Government should assign this instrument without insurance of the payment of the note, to secure prompt payment of the note and any renewals and extensions thereof and any agreements contained therein, including any provision for the payment of an insurance or other charge, (b) at all times when the note is held by an insured holder, to secure performance of Borrower's agreement herein to indemnify and save harmless the Government against loss under its insurance contract by reason of any default by Borrower, and (c) in any event and at all times to secure the prompt payment of all advances and expenditures made by the Government, with interest, as hereinafter described, and the performance of every covenant and agreement of Borrower contained herein or in any supplementary agreement, Borrower does hereby grant, convey, mortgage, assign and forever warrant unto the Government the following property situated in the State of Maine,

County(ies) of _____ Waldo _____ :

FmHA 1927-1 ME (Rev. 12-93)

BK 1496 PG 130

SEE SCHEDULE A ATTACHED HERETO

together with all rights (including the right to mining products, gravel, oil, gas, coal or other minerals), interests, easements, hereditaments and appurtenances thereunto belonging, the rents, issues and profits thereof and revenues and income therefrom, all improvements and personal property now or later attached thereto or reasonably necessary to the use thereof, including, but not limited to, ranges, refrigerators, clothes washers, clothes dryers, or carpeting purchased or financed in whole or in part with loan funds, all water, water rights, and water stock pertaining thereto, used thereupon, or reasonably necessary to the use thereof, whether now owned or hereafter acquired by Borrower, and all payments at any time owing to Borrower by virtue of any sale, lease, transfer, conveyance, or condemnation of any part thereof or interest therein-all of which are hereinafter called said property;

This mortgage is also intended to be a financing statement within the meaning of Article 9 of the Uniform Commercial Code covering fixtures attached to the above-described real estate, now owned or hereafter required; and crops growing or to be grown on the above-described real estate.

TO HAVE AND TO HOLD the property unto the Government and its assigns forever in fee simple.

BORROWER for Borrower's self, Borrower's heirs, executors, administrators, successors and assigns WARRANTS THE TITLE to the property to the Government against all lawful claims and demands whatsoever except any liens, encumbrances, easements, reservations, or conveyances specified hereinabove, and COVENANTS AND AGREES as follows:

(1) To pay promptly when due any indebtedness to the Government hereby secured and to indemnify and save harmless the Government against any loss under its insurance of payment of the note by reason of any default by Borrower. At all times when the note is held by an insured holder, Borrower shall continue to make payments on the note to the Government, as collection agent for the holder.

(2) To pay to the Government such fees and other charges as may now or hereafter be required by regulations of the Farmers Home Administration.

(3) If required by the Government, to make additional monthly payments of 1/12 of the estimated annual taxes, assessments, insurance premiums and other charges upon the mortgaged premises.

(4) Whether or not the note is insured by the Government, the Government may at any time pay any other amounts including advances for payment of prior and/or junior liens, required herein to be so paid by Borrower and not paid by Borrower when due, as well as any costs and expenses for the preservation, protection, or enforcement of this lien, as advances for the account of Borrower. All such advances shall bear interest at the rate borne by the note which has the highest interest rate.

(5) All advances by the Government, including advances for payment of prior and/or junior liens, in addition to any advances required by the terms of the note, as described in this instrument, with interest, shall be immediately due and payable by Borrower to the Government without demand at the place designated in the latest note and shall be secured hereby. No such advance by the Government shall relieve Borrower from breach of Borrower's covenant to pay. Any payment made by Borrower may be applied on the note or any indebtedness to the Government secured hereby, in any order the Government determines.

(6) To use the loan evidenced by the note solely for purposes authorized by the Government.

(7) To pay when due all taxes, liens, judgments, encumbrances, and assessments lawfully attached to or assessed against the property, including all charges and assessments in connection with water, water rights, and water stock pertaining to or reasonably necessary to the use of the real property described above, and promptly deliver to the Government without demand receipts evidencing such payments.

(8) To keep the property insured as required by and under insurance policies approved by the Government and, at its request, to deliver such policies to the Government.

(9) To maintain improvements in good repair and make repairs required by the Government; operate the property in a good and husbandmanlike manner; comply with such farm conservation practices and farm and home management plans as the Government from time to time may prescribe; and not to abandon the property, or cause or permit waste, lessening or impairment of the security covered hereby, or, without the written consent of the Government, cut, remove, or lease any timber, gravel, oil, gas, coal, or other minerals except as may be necessary for ordinary domestic purposes.

(10) To comply with all laws, ordinances, and regulations affecting the property.

(11) To pay or reimburse the Government for expenses reasonably necessary or incidental to the protection of the lien and priority hereof and to the enforcement of or the compliance with the provisions hereof and of the note and any supplementary agreement (whether before or after default), including but not limited to costs of evidence of title to and survey of the property, costs of recording this and other instruments, attorneys' fees, trustees' fees, court costs, and expenses of advertising, selling, and conveying the property.

(12) Except as otherwise provided in Farmers Home Administration regulations, neither the property nor any portion thereof or interest therein shall be leased, assigned, sold, transferred, or encumbered, voluntarily or otherwise, without the written consent of the Government. The Government shall have the sole and exclusive rights as mortgagee hereunder, including but not limited to the power to grant consents, partial releases, subordinations and satisfaction, and no insured holder shall have any right, title or interest in or to the lien or any benefits hereof.

(13) At all reasonable times the Government and its agents may inspect the property to ascertain whether the covenants and agreements contained herein or in any supplementary agreement are being performed.

(14) The Government may (a) adjust the interest rate, payment, terms or balance due on the loan, (b) increase the mortgage by an amount equal to deferred interest on the outstanding principal balance, (c) extend or defer the maturity of, and renew and reschedule the payments on, the debt evidenced by the note or any indebtedness to the Government secured by this instrument, (d) release any party who is liable under the note or for the debt from liability to the Government, (e) release portions of the property and subordinate its lien, and (f) waive any other of its rights under this instrument. Any and all this can and will be done without affecting the lien or the priority of this instrument or Borrower's or any other party's liability to the Government for payment of the note or debt secured by this instrument unless the Government says otherwise in writing. HOWEVER, any forbearance by the the Government--whether once or often-in exercising any right or remedy under this instrument, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

(15) If at any time it shall appear to the Government that Borrower may be able to obtain a loan from a production credit association, a Federal land bank, or other responsible cooperative or private credit source, at reasonable rates and terms for loans for similar purposes and periods of time, Borrower will, upon the Government's request, apply for and accept such loan in sufficient amount to pay the note and any indebtedness secured hereby and to pay for any stock necessary to be purchased in a cooperative lending agency in connection with such loan.

(16) Default hereunder shall constitute default under any other real estate, or under any personal property or other, security instrument held or insured by the Government and executed or assumed by Borrower, and default under any such other security instrument shall constitute default hereunder.

(17) SHOULD DEFAULT occur in the performance or discharge of any obligation in this instrument or secured by this instrument, or should the parties named as Borrower die or be declared incompetent, or should any one of the parties named as Borrower be declared a bankrupt or an insolvent or make an assignment for the benefit of creditors, the Government, at its option, with or without notice, may: (a) declare the entire amount unpaid under the note and any indebtedness to the Government hereby secured immediately due and payable, (b) for the account of Borrower incur and pay reasonable expenses for repair or maintenance of and take possession of, operate or rent the property, (c) upon application by it and production of this instrument without other evidence and without notice of hearing of said application, have a receiver appointed for the property, with the usual powers of receivers in like cases, (d) foreclose this instrument as provided herein or by law, and (e) enforce any and all other rights and remedies provided herein or by present or future law.

(18) The proceeds of foreclosure sale shall be applied in the following order to the payment of: (a) costs and expenses incident to enforcing or complying with the provisions hereof, (b) any prior liens required by law or a competent court to be so paid, (c) the debt evidenced by the note and all indebtedness to the Government secured hereby, (d) inferior liens of record required by law or a competent court to be so paid, (e) at the Government's option, any other indebtedness of Borrower owing to or insured by the Government, and (f) any balance to Borrower. At foreclosure or other sale of all or any part of the property, the Government and its agents may bid and purchase as a stranger and may pay the Government's share of the purchase price by crediting such amount on any debts of Borrower owing to or insured by the Government, in the order prescribed above.

(19) Borrower agrees that the Government will not be bound by any present or future State laws, (a) providing for valuation, appraisal, homestead or exemption of the property, (b) prohibiting maintenance of an action for a deficiency judgment or limiting the amount thereof or the time within which such action may be brought, (c) prescribing any other statute of limitations, (d) allowing any right of redemption or possession, or (e) limiting the conditions which the Government may by regulation impose, including the interest rate it may charge, as a condition of approving a transfer of the property to a new Borrower. Borrower expressly waives the benefit of any such State law. Borrower hereby relinquishes, waives, and conveys all rights, inchoate or consummate, of descent, dower, and curtesy.

(20) If any part of the loan for which this instrument is given shall be used to finance the purchase, construction or repair of property to be used as an owner-occupied dwelling (herein called "the dwelling") and if Borrower intends to sell or rent the dwelling and has obtained the Government's consent to do so (a) neither Borrower nor anyone authorized to act for Borrower will, after receipt of a bona fide offer, refuse to negotiate for the sale or rental of the dwelling or will otherwise make unavailable or deny the dwelling to anyone because of race, color, religion, sex, national origin, handicap, familial status, or age, and (b) Borrower recognizes as illegal and hereby disclaims, and will not comply with or attempt to enforce any restrictive covenants on the dwelling relating to race, color, religion, sex, national origin, handicap, familial status, or age.

(21) Borrower further agrees that the loan(s) secured by this instrument will be in default should any loan proceeds be used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 CFR Part 1940, Subpart G, Exhibit M.

(22) This instrument shall be subject to the present regulations of the Farmers Home Administration, and to its future regulations not inconsistent with the express provisions hereof.

(23) Notices given hereunder shall be sent by certified mail, unless otherwise required by law, and addressed, unless and until some other address is designated in a notice so given, in the case of the Government to Farmers Home Administration at P.O. Box 405, Bangor, ME 04402-0405, and in the case of Borrower to Borrower at the address shown in the Farmers Home Administration Finance Office records (which normally will be the same as the post office address shown above).

(24) Upon default by Borrower as aforesaid, the Government may foreclose this instrument as authorized or permitted by the laws then existing of the jurisdiction where the property is situated or of the United States of America, on terms and conditions satisfactory to the Government, including but not limited to foreclosure by (a) statutory power of sale (33 M.R.S.A. 501A), or (b) advertisement and sale of the property at public auction to the highest bidder in one or more parcels at the Government's option and at the time and place and the manner and after such notices and on terms as may be required by statute or as may be determined by the Government if not contrary to statute, or (c) written agreement hereafter made between Borrower and the Government.

(25) If any provision of this instrument or application thereof to any person or circumstances is held invalid, such invalidity will not affect other provisions or applications of the instrument which can be given effect without the invalid provision or application, and to that end the provisions hereof are declared to be severable.

PROVIDED that if all the indebtedness hereby secured is duly paid and each and every covenant, condition, agreement and obligation, contingent or otherwise, contained herein, secured hereby or arising hereunder is fully performed and discharged, this mortgage shall be void; otherwise to remain in full force and effect.

BK1496 PG132

IN WITNESS WHEREOF, Borrower has hereunto set Borrower's hand(s) and seal(s) this ___17th___ day of ___November___, 19_94_.

Signed, sealed, and delivered in the presence of

_Brenda G. Dakin_                         _Christine K. Ogden_ (SEAL)
                                          Christine D. Ogden

_____ (SEAL)

STATE OF __MAINE__

COUNTY OF __WALDO__

**ACKNOWLEDGMENT**

On this __17th__ day of __November__, 19_94_, before me, the undersigned, a Notary Public in and for said State and County, personally appeared __Christine D. Ogden__

individually known to me and by me known to be the parties executing the foregoing instrument, and to me acknowledged the said instrument to be executed by them as their free act and deed.

IN WITNESS WHEREOF, I hereunto set my hand and official seal on the date above written.

My commission expires __3/15/2000__      _Brenda G. Dakin_
                                          Notary Public.  Brenda G. Dakin

(NOTARIAL SEAL)

MAILING ADDRESS OF MORTGAGEE

In accordance with 33 Maine Revised Statutes Annotated 456, as amended (Chapter 57 of the 1971 Laws) I hereby certify that the precise address of the within Mortgagee is South Building, 14th and Independence Ave., S.W., Washington, D.C. 20250.

_____
For Mortgagee

*U.S. Government Printing Office: 1993-556-550

EXHIBIT A

Two certain lots or parcels of land together with the buildings thereon, situated in SEARSPORT, Waldo County, Maine, more particularly bounded and described as follows, to wit:

PARCEL I: A certain lot or parcel of land together with the buildings thereon, situated in Searsport, Waldo County, Maine, more particularly bounded and descrbed in a deed from Roland W. Ward and Donna A. Herrick to Francis William Zito and Cynthia G. Zito dated May 18, 1984 and recorded May 21, 1984 in the Waldo County Registry of Deeds in Book 823, Page 554, as follows, to wit:

"BEGINNING on the easterly side of the former U.S. Highway, being the old road from Searsport to Stockton Springs, at an iron stake marking the northwesterly corner of a lot of land conveyed by Jennie T. Gray to Wallace Bowden and Ivadelle Bowden by deed dated May 1, 1964, recorded in the Waldo Registry of Deeds, Book 621, Page 537; thence northerly along the easterly bound of the old Atlantic Highway ninety-one (91) feet, more or less, to an iron stake marking the southwesterly corner of a lot of land conveyed by Harry V. Gray to Jennie E. Gray by deed dated April 11, 1956, recorded in Waldo Registry of Deeds, Book 564, Page 111; thence easterly by the southerly bound of said last described parcel of land one hundred (100) feet, more or less, to an iron stake; thence southerly on a line approximately parallel with the old Atlantic Highway ninety-one (91) feet, more or less, to an iron stake marking the northeasterly corner of the aforementioned lot conveyed by Jessie E. Gray to Wallace Bowden and Ivadelle Bowden; thence westerly by the northerly line of the Bowden lot one hundred (100) feet, ore or less, to the place of beginning."

Meaning and intending to convey and hereby conveying the same premises described in a deed from Francis William Zito and Cynthia G. Zito to Christine D. Ogden to be recorded herewith.

PARCEL II: A certain lot or parcel of land together with the buildings thereon, situated in SEARSPORT, Waldo County, Maine, more particularly bounded and described in a deed from Antonenia Rowe, et als, to Francis W. Zito and Cynthia G. Zito dated June 17, 1987 and recorded June 26, 1987 in the Waldo County Registry of Deeds, Book 970, Page 86, as follows, to wit:

"Beginning at a point in the generally northeasterly corner of land of the within Grantee; thence running in a generally southerly direction along the easterly bound of land of the within Grantee a distance of ninety-one feet (91'), more or less, to land now or formerly of Bowden; thence running in a generally

BK 1496 PG 174

easterly direction along the northerly bound of land conveyed by Bowden by deed recorded in the Waldo County Registry of Deeds in Book 648, at Page 238, a distance of one hundred feet (100'), more or less, to the northeasterly corner of land conveyed to Bowden as aforesaid; thence running in a generally northerly direction a distance of ninety-one feet (91'), more or less, to land now or formerly of Rairigh as described in a deed recorded in said Registry in Book 770, at Page 53; thence running in a generally westerly direction along the southerly bound of said Rairigh a distance of one hundred feet (100'), more or less, to the point of beginning."

Meaning and intending to convey and hereby conveying the same premises described in a deed from Francis W. Zito and Cynthia G. Zito to Christine D. Ogden of even date hereof.

RECEIVED WALDO SS.

1994 NOV 17 PM 2:22

ATTEST: Delores Page
REGISTER OF DEEDS